UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *      Case No. 11-CR-517 (KAM)
                              *
                              *      Brooklyn, New York
                              *      September 18, 2012
     v.                       *
                              *
VICTOR GORDON,                *
                              *
          Defendant.          *
                              *
* * * * * * * * * * * * * * * *

           TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
             BEFORE THE HONORABLE ROBERT M. LEVY
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          DARREN LaVERNE, ESQ.
                            Asst. United States Attorney
                            United States Attorney's Office
                            271 Cadman Plaza
                            Brooklyn, NY 11201


For the Defendant:          DANIEL PAUL ALVA, ESQ.
                            Alva & Associates
                            1601 Market Street, Suite 1001
                            Philadelphia, PA  19103




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1          (Proceedings commenced at 4:08 p.m.)

2          THE CLERK:  Criminal cause for a pleading, the

3    United States versus Victor Gordon, case number 11-CR-517.

4    Please state your appearances for the record.

5          MR. LaVERNE:  Good afternoon, Your Honor.  Darren

6    LaVerne for the United States.

7          THE COURT:  Good afternoon.

8          MR. ALVA:  Good afternoon, Your Honor.  Daniel Paul

9    Alva for the defendant.

10          THE COURT:  Good afternoon.

11          THE DEFENDANT:  Good afternoon.

12          THE COURT:  Good afternoon, sir.

13          THE DEFENDANT:  Good afternoon, Your Honor.  I'm

14    Victor Gordon.

15          THE COURT:  All right.  Would you like to swear Mr.

16    Gordon?

17          (The defendant is sworn.)

18          THE COURT:  All right.  What is Mr. Gordon going to

19    do today?

20          MR. ALVA:  May it please the Court, the government

21    and the defense have entered into negotiations and a plea

22    agreement which will shortly be made part of the record, and

23    it's his intention to plead guilty to the counts in the

24    superceding indictment.  Superceding information, I should

25    say.

1          THE COURT:  Okay.  So is he going to waive

2   indictment on those charges?

3          MR. ALVA:  Yes, he is.

4          THE COURT:  And plead through an information?

5          MR. ALVA:  That's correct, and he has executed the

6   waiver of that --

7          THE COURT:  Okay.

8          MR. ALVA:  -- that indictment.

9          THE COURT:  All right.  So Mr. Gordon, you're under

10  oath.  I'm going to ask you a lot of questions.

11          If there's anything that you don't understand, just

12  ask me and I'll be glad to explain it, or feel free to

13  consult privately with your lawyer.  We'll turn the record

14  off.  Your statements have to be honest and complete.

15          If you make any false statements, you could

16  prosecuted for perjury.

17          Do you understand?

18          THE DEFENDANT:  I do, Your Honor.

19          THE COURT:  All right.  Now, can we make sure that

20  his voice is being picked up on the microphones?  You

21  shouldn't have to bend down, but as long as you speak up, it

22  should work out just fine.  All right.

23          So let's start with the order of referral.  This is

24  an order of referral in which you have consented to have me,

25  a Magistrate Judge, hear your guilty plea and make a

1    recommendation to Judge Matsumoto, who is the District Judge

2    who will decide whether to accept the plea and if so, will

3    sentence you.

4            Do you understand?

5            THE DEFENDANT:  I do, Your Honor.

6            THE COURT:  And is this your signature on the order

7    of referral?  Do you --

8            THE DEFENDANT:  It is.

9            THE COURT:  Yes.  And before you signed it, did you

10    discuss it fully with your lawyer?

11            THE DEFENDANT:  I did, Your Honor.

12            THE COURT:  Do you have any questions about what

13    you're doing?

14            THE DEFENDANT:  No, Your Honor.

15            THE COURT:  And do you understand you don't have to

16    have me hear your plea?  Judge Matsumoto would be more than

17    happy to hear it if you prefer.

18            THE DEFENDANT:  I understand, Your Honor.

19            THE COURT:  Right.  And are you agreeing to have me

20    hear the plea voluntarily?

21            THE DEFENDANT:  Yes, Your Honor.

22            THE COURT:  Okay.  So would the government please

23    explain what the information is before we do the waiver?

24            MR. LaVERNE:  Sure, Your Honor.  The superceding

25    information charges a sole -- a single count.

1          And it charges smuggling of elephant ivory.  In

2     particular, it charges that in or about and between March

3     2009 and April 2009, and those dates are approximate and

4     inclusive, within the Eastern District of New York and

5     elsewhere, the defendant together with others did knowingly,

6     intentionally and fraudulently import and bring into the

7     United States merchandise, *to wit*, elephant ivory, contrary

8     to law.

9          Here, the African Elephant Conservation Act, Title

10    16, United States Code Sections 4223 and received, concealed,

11    buy and sell and facilitate the transportation, concealment

12    and sale of such merchandise after implication knowing the

13    same to have been imported and brought into the United States

14    contrary to law.  That's what's charged in the indictment.

15          THE COURT:  All right.  And --

16          MR. LaVERNE:  It follows a series of forfeiture

17    allegations regarding pieces of ivory that have been seized

18    by the government and the government alleges are forfeitable.

19          THE COURT:  And would the count of smuggling of

20    elephant ivory be a felony?

21          MR. LaVERNE:  Yes.  That's right, Your Honor.

22          THE COURT:  And do you happen to know what level

23    felony that is?

24          MR. LaVERNE:  I don't know what grade felony it is.

25    I do know that the maximum term of imprisonment is 20 years.

1          THE COURT:  Okay.

2          MR. LaVERNE:  So I haven't looked at the -- maybe

3     it's a grade C?  I just haven't looked at the statute in a

4     while.

5          MR. ALVA:  I'm in the same boat.

6          THE COURT:  Okay.  All right.  Mr. Gordon, have you

7     had a chance to read the superceding information?

8          THE DEFENDANT:  I have, Your Honor.

9          THE COURT:  And have you heard the government's

10    explanation of the charge?

11         THE DEFENDANT:  I have, Your Honor.

12         THE COURT:  Do you understand the charge?

13         THE DEFENDANT:  I do, Your Honor.

14         THE COURT:  Do you understand that you have a right

15    to have the charge against you presented to a grand jury to

16    determine whether there's probable cause?

17         THE DEFENDANT:  I do, Your Honor.

18         THE COURT:  And to you understand that if you waive

19    indictment, you are giving up your right to have a grand jury

20    determine whether or not there is probable cause to bring

21    this charge against you?

22         THE DEFENDANT:  I do, Your Honor.

23         THE COURT:  And do you understand that this is a

24    serious charge?  It's a felony and the penalty for that

25    felony is a possibility of up to 20 years in prison,

1    including other possible penalties.

2              Do you understand?

3              THE DEFENDANT:  I do.  Yes, Your Honor.

4              THE COURT:  And do you see this waiver of

5    indictment form?  Can you see it if I pass it down to you?

6              THE DEFENDANT:  I see that I signed it, Your Honor.

7              THE COURT:  Okay.  I'll pass it down.  It's all

8    right.  Is that your signature at the bottom?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  And before you signed it, did you read

11   it carefully and discuss it with your lawyer?

12             THE DEFENDANT:  I did, Your Honor.

13             THE COURT:  And are you agreeing voluntarily to

14   waive your right to proceed by an indictment and consent that

15   the proceeding may be made by information rather than by

16   indictment?

17             THE DEFENDANT:  I did, Your Honor.

18             THE COURT:  Do you have any questions about what

19   you're doing?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  And counsel, are you satisfied that Mr.

22   Gordon's consent is knowing and voluntarily?

23             MR. ALVA:  I am so satisfied.

24             THE COURT:  Okay.  All right.  I'm sure you've

25   discussed with your lawyer what this plea proceeding is

1    about.  It has several parts to it.

2         One is to make sure that you are fully competent to

3    make this decision.  The second part is to make sure that you

4    fully understand the rights that you have because you'll be

5    giving them up if you plead guilty, and another part is where

6    I need to be sure you understand the possible consequences of

7    a guilty plea, and of the sentence, fine and other penalties

8    that you would face.  And that you are, in fact, guilty if

9    you do in fact choose to plead guilty.

10        This proceeding is both for your benefit and for

11   mine to make sure that you understand what you're doing and

12   what rights have you have and the rights you'd be waiving.

13   It's also for mine because I can't recommend that you plead

14   guilty or that your plea be accepted if you are in fact

15   guilty and if you don't truly knowingly and voluntarily waive

16   your rights.

17        Do you understand?

18        THE DEFENDANT:  I do, Your Honor.

19        THE COURT:  Okay.  So again, if you have any

20   questions, feel free to consult your lawyer or ask me.  So

21   what is your full name?

22        THE DEFENDANT:  Victor Van Gordon.

23        THE COURT:  How old are you?

24        THE DEFENDANT:  I'm 70.

25        THE COURT:  What is the last level of school that

1    you finished?

2              THE DEFENDANT:  One year of college, I guess.  Or,

3    I don't -- I didn't finish that.

4              THE COURT:  Okay.  So high school is the last year

5    that -- the last year of schooling that you finished?

6              THE DEFENDANT:  As I recollect.

7              THE COURT:  Okay.  Are you now or have you recently

8    been under the care of a doctor or a psychiatrist?

9              THE DEFENDANT:  I'm under a doctor's care, Your

10   Honor.

11             THE COURT:  Okay.  And in past 24 hours, have you

12   taken any medicine or pills?

13             THE DEFENDANT:  No, Your Honor.

14             THE COURT:  Are you under a doctor's care for any

15   illness or condition that would affect your ability to think,

16   to reason, to pay attention, to understand what's happening?

17             THE DEFENDANT:  No, Your Honor.

18             THE COURT:  Do you feel comfortable telling me what

19   you're under the doctor's care for?

20             THE DEFENDANT:  Yes, I feel comfortable.

21             THE COURT:  Okay.  What would that be?

22             THE DEFENDANT:  I have cancer antibodies in my

23   blood and the level has gone up twice in the last two visits.

24             THE COURT:  All right.

25             THE DEFENDANT:  And my brother was just -- had his

1    organs cut out with cancer.

2              THE COURT:  So are you receiving any treatment now

3    at this point, or just monitoring?

4              THE DEFENDANT:  No.  They just took x-ray scans of

5    me.

6              THE COURT:  All right.  In the past 24 hours, have

7    you taken any narcotic drugs?

8              THE DEFENDANT:   No, Your Honor.

9              THE COURT:  Drunk any alcoholic beverages?

10             THE DEFENDANT:  No, Your Honor.

11             THE COURT:  Have you ever been hospitalized for

12   drug addiction?

13             THE DEFENDANT:  No, Your Honor.

14             THE COURT:  For alcoholism?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  For a mental or emotional problem?

17             THE DEFENDANT:  No, Your Honor.

18             THE COURT:  Is your mind clear now?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Do you understand why you're here and

21   what's happening here today?

22             THE DEFENDANT:  I do, Your Honor.

23             THE COURT:  All right.  I'm going to ask your

24   lawyer a few questions and then come back to you.  All right.

25   Have you discussed this matter fully with Mr. Gordon?

1          MR. ALVA:  I have, Your Honor.

2          THE COURT:  Does he understand the rights that he

3    would be waiving by pleading guilty?

4          MR. ALVA:  He so appears to be.  Yes.

5          THE COURT:  Is he capable of understanding the

6    nature of these proceedings?

7          MR. ALVA:  He is.

8          THE COURT:  Do you have any doubts as to his

9    competence to plead at this time?

10          MR. ALVA:  No.

11          THE COURT:  Okay.  Have you advised him of the

12    possible maximum and minimum sentence, fine and other

13    penalties that he faces?

14          MR. ALVA:  I have.

15          THE COURT:  Have you explained to him how the

16    sentencing guidelines work?

17          MR. ALVA:  I have.

18          THE COURT:  Have you advised him that if he's not a

19    citizen of this country, he would face deportation after he

20    serves his sentence?

21          MR. ALVA:  I advised him of that fact.

22          THE COURT:  Have you advised him that there's no

23    guarantee at this time what his sentence will be, or what his

24    guideline range will be?

25          MR. ALVA:  Yes, I have.

1          THE COURT:  Do you think he understood all of your

2     discussions?

3          MR. ALVA:  Yes.

4          THE COURT:  Okay.  Mr. Gordon, did you hear what

5     your lawyer said?

6          THE DEFENDANT:  I did, Your Honor.

7          THE COURT:  And do you agree with what he said?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Have you discussed your case with him

10    fully?

11         THE DEFENDANT:  I have, Your Honor.

12         THE COURT:  Are you satisfied to have him represent

13    you?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Do you have any questions that you'd

16    like to ask him before we go any further?

17         THE DEFENDANT:  Not at this point, Your Honor.

18         THE COURT:  Okay.  Did you fully understand the

19    charge that -- I asked you a little bit earlier about the

20    charge when you waived indictment, but do you fully

21    understand the charge against you?  The smuggling charge?

22         THE DEFENDANT:  I do, Your Honor.

23         THE COURT:  And the forfeiture allegations?

24         THE DEFENDANT:  I do, Your Honor.

25         THE COURT:  And the individual acts that are

1  alleged?  The acts of smuggling that are alleged in the

2  information?  Superceding information?

3           THE DEFENDANT:  I do, Your Honor.

4           THE COURT:  Okay.  All right.  So let's talk about

5  your rights.  These are rights that you'll give up if you

6  plead guilty.

7           Do you understand that it's your right to plead not

8  guilty if you wish to?

9           THE DEFENDANT:  I do, Your Honor.

10          THE COURT:  Do you understand that if you continue

11  to plead not guilty, it's your right under the Constitution

12  and laws of the United States to a speedy, public trial by

13  jury with the help of your lawyer on the charges contained in

14  the superceding information?

15          THE DEFENDANT:  I do, Your Honor.

16          THE COURT:  Do you understand that if you cannot

17  afford to retain counsel, the Court will ensure that you have

18  appointed counsel throughout all stages of this proceeding,

19  to advise you and represent you both pre-trial, at trial and

20  on appeal if you're convicted?

21          Do you understand that?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  And that would be at no cost to you.

24  Do you understand?

25          THE DEFENDANT:  I do, Your Honor.

1          THE COURT:  Do you understand that at your trial

2     you would be presumed innocent?

3          Which means that you don't have to present any

4     evidence. The government has to prove your guilt by competent

5     evidence admissible in court and persuade a jury beyond a

6     reasonable doubt of any charge against you.

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  So even if you did everything the

9     government has accused you of, if it cannot persuade a jury

10     beyond a reasonable doubt of your guilt, the jury would have

11     a duty to find you not guilty.

12          Do you understand?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Okay.  Any questions about anything so

15     far?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  During your trial, the government would

18     have to bring its witnesses to court.  They would have to

19     testify in your presence.

20          Your lawyer would have the right to cross-examine

21     them, to object to the government's evidence, to present

22     evidence in your defense and to compel witnesses who you wish

23     to call to appear at trial.

24          Do you understand?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And if you decide to go to trail, you

2     would have a choice to make.  It's your right to testify in

3     your defense if you wish to, but you also have a right to

4     remain silent and not to incriminate yourself.

5          Do you understand?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  So if you decide to go to trial, but

8     not to testify, Judge Matsumoto would instruct the jurors

9     that they couldn't hold against you the fact that you didn't

10    testify in your own defense.

11         Do you understand?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Any questions?

14         THE DEFENDANT:  No, Your Honor.

15         THE COURT:  If you plead guilty and the Court

16    accepts your guilty plea, you'll be giving up your

17    Constitutional right to a trial, the right to cross-examine

18    witnesses, to present evidence -- all the rights that I just

19    explained to you.

20         Do you understand?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  There'll be no trial of any kind, no

23    right to appeal from the judgment of guilty.  The Court will

24    simply enter a judgment that says that you're guilty based on

25    what you say here today.

1          Do you understand?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And as I said earlier, before I can

4     recommend that your plea be accepted, I have to be assured

5     that you really are guilty.

6          So I'm going to ask you some questions.  You'll

7     have to answer my questions and admit your guilt and when you

8     do that, you'll be giving up your right to remain silent and

9     not to incriminate yourself.

10          Do you understand?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Any questions so far?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  So Mr. Gordon, are you willing to give

15     up your right to a trial and the other rights that I've just

16     discussed?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Do you have a copy of the plea

19     agreement that you can follow along?

20          MR. ALVA:  Yes, he does.

21          THE COURT:  Okay.  Great.  All right.  It's been

22     marked as Court Exhibit No. 1.

23          Is this the only agreement between the government

24     and the defense at this time?

25          MR. LaVERNE:  Yes, it is.

1          MR. ALVA:  Yes, sir.

2          THE COURT:  Okay.  All right.  So I'm going to ask

3    you to turn to the last page.  It's a signature page.  My

4    copy has a signature just above your name.  Did you, in fact,

5    sign this?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Okay.  And did you ask your attorney

8    any questions that you had before you signed it?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  All right.  And did you read it

11   carefully and do you think you understand all of the -- do

12   you understand the agreement?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Okay.  All right.  So going back to

15   page 1.  Page 1, in paragraph 1, the agreement says that

16   you'll waive indictment and plead guilty to the sole count of

17   the superceding information.

18              If you do that, you're facing a possibility of from

19   zero to 20 years in prison.

20              Do you understand?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  And if you are sentenced to prison,

23   there is a possibility of supervised release.

24              Do you understand what supervised release is?

25         THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  All right.  So you could be placed on

2  supervised release for a maximum of three years after you're

3  released from prison if you're sentenced to prison.  Do you

4  understand that?

5    THE DEFENDANT:  Yes, Your Honor.

6    THE COURT:  And there is a penalty for the

7  violation of a condition of supervised release, and that is

8  that you could be sentenced up to two years in prison without

9  any credit for the time you'd been in prison on supervised

10  release.

11    Do you understand?

12    THE DEFENDANT:  Yes, Your Honor.

13    THE COURT:  On the next page, there is mention of a

14  fine which is in paragraph 1(d).  The maximum fine is

15  $250,000 or twice the gross gain or loss, whichever is

16  greater.  Do you understand what that means?

17    THE DEFENDANT:  Yes, Your Honor.

18    THE COURT:  And you've discussed that with your

19  lawyer?

20    THE DEFENDANT:  Yes, Your Honor.

21    THE COURT:  There is a fee called a special

22  assessment of $100 which you have to pay at the time of

23  sentencing.  Are you aware of that?

24    THE DEFENDANT:  Yes, Your Honor.

25    THE COURT:  And then there's a criminal forfeiture

1  provision that was mentioned earlier and it's -- do you

2  understand how that works and -- or do you need more

3  explanation of that?

4          THE DEFENDANT:  No.  I understand it, Your Honor.

5          THE COURT:  Okay.  All right.  Anything else do you

6  need me to mention about the penalties at this time?

7          MR. LaVERNE:  No.  I think it's set out in further

8  detail in the agreement.  I don't think it's necessary to go

9  into further detail.

10          MR. ALVA:  I'll agree.

11          THE COURT:  Okay.  All right.  In paragraph 2,

12  there's a discussion of the sentencing guidelines.  Now

13  you've already discussed the guidelines with your lawyer,

14  correct?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  And so you understand that they're just

17  advisory guidelines?  They're not firm rules.  The Court has

18  to calculate your guideline range and then decide whether or

19  not to sentence you within the guidelines or above or below

20  the guidelines.  Judge Matsumoto will decide what the fair

21  sentence will be in your case, and that may or may not be

22  within the guideline range.  Do you understand?

23          THE DEFENDANT:  I do, Your Honor.

24          THE COURT:  At this time, nobody can tell you for

25  sure what your sentence will be or even what the guideline

1    range will be.  Do you understand that?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  So if you decide to plead guilty here

4    today, you'll be doing that without knowing for sure how

5    you'll be sentenced.  Do you understand?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  In paragraph 2, the government has

8    provided a guidelines estimate and I assume you've discussed

9    that with your lawyer.  Is that correct?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  So I'm just going to ask

12    the government briefly to explain its estimate.

13          MR. LaVERNE:  Sure, Your Honor.  The bottom-line

14    estimate which assumes that the defendant successfully pleads

15    guilty today and accepts responsibility both today and prior

16    to sentence and the period leading up to sentence is a total

17    adjusted offense level of 19 and a criminal history category

18    of 1, which yields -- would yield a sentence of 30 to 37

19    months' imprisonment.

20          I'll just emphasize here again in this agreement,

21    as in most agreements that we have, the acceptance of

22    responsibility is predicated on not falsely denying or

23    contesting relevant conduct prior to sentence.  So that

24    provision applies with force here as well.

25          I'll also add that there is an agreement which is

1    set out in the plea agreement that the defendant agrees that

2    his guidelines range should be calculated based on a market

3    value of at least $400,000 and waives any right to a jury

4    trial or a <u>Fatico</u> hearing in connection with that issue.

5         Finally, there's an agreement by the defendant that

6    any fines collected as a result of the sentence should be

7    contributed to the African Elephant Conservation Fund.

8         THE COURT:  All right.  Mr. Alva, anything to add?

9         MR. ALVA:  No, Your Honor.  Thank you.

10        THE COURT:  Okay.  And Mr. Gordon, do you

11   understand what was just said?

12        THE DEFENDANT:  I do, Your Honor.

13        THE COURT:  Okay.  Now we've talked a lot about

14   guidelines.  But that's not the only basis for sentencing

15   you.  Under 18 U.S.C. 3553(a) which is the statute that the

16   Court looks at, the Court must consider the guidelines, but

17   also must consider other things such as the circumstances of

18   the offense, and your background, your respect for the law,

19   what would be just punishment, deterrence, protecting the

20   public from further crimes and your need for effective

21   correctional treatment.  So there are a variety of factors

22   that the Court considers in sentencing you.  Do you

23   understand?

24        THE DEFENDANT:  I do, Your Honor.

25        THE COURT:  Okay.  Now in paragraph 4, you have

1      agreed not to appeal or otherwise challenge your sentence or

2      conviction if you receive a term of imprisonment of 41 months

3      or less.  That's on page 4, paragraph 4.  Do you understand

4      that?

5                  THE DEFENDANT:  I do, Your Honor.

6                  THE COURT:  Okay.  Is there anything else in the

7      agreement that either party would like to place on the

8      record?

9                  MR. LaVERNE:  Not at this time, Your Honor.

10                 MR. ALVA:  Not at this time, sir.

11                 THE COURT:  Do you have any questions about the

12     plea agreement or anything else having to do with this case?

13                 THE DEFENDANT:  No, Your Honor.

14                 THE COURT:  Now in federal court, we do not have

15     parole.  There is something called parole in state court

16     which is early release from a sentence on what is called

17     parole.  We don't have that in federal court.  Do you

18     understand that?

19                 THE DEFENDANT:  I do, Your Honor.

20                 THE COURT:  Okay.  All right.  Again, are there any

21     questions you'd like to ask me or discuss with your lawyer

22     before you go any further?

23                 THE DEFENDANT:  No, Your Honor.

24                 THE COURT:  Are you ready to plead?

25                 THE DEFENDANT:  I am, Your Honor.

1          THE COURT:  Mr. Alva, is there any reason why Mr.

2     Gordon should not plead guilty to the information?

3          MR. ALVA:  I know of none, Your Honor.

4          THE COURT:  Mr. Gordon, how do you plead to the

5     superceding information?  Guilty or not guilty?

6          THE DEFENDANT:  Guilty, Your Honor.

7          THE COURT:  Are you pleading guilty voluntarily?

8          THE DEFENDANT:  I am, Your Honor.

9          THE COURT:  Has anyone forced you or threatened

10    you?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  Has anyone made you any promises other

13    than what's in the plea agreement that induced you to plead

14    guilty?

15         THE DEFENDANT:  No, Your Honor.

16         THE COURT:  Has anyone promised you what your

17    sentence will be?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  All right.  So the charge is smuggling

20    of elephant ivory.  The period alleged in the superceding

21    information is between March 2009 and April 2009.  And it is

22    alleged that you committed this crime within the Eastern

23    District of New York.  So can you tell me what it is that you

24    did that makes you guilty of this crime and whether, in fact,

25    this was the time period and you did do this in the Eastern

1    District?

2        MR. ALVA:  With your permission, Your Honor, Mr.

3    Gordon has -- one of the things you did not cover with him

4    regarding his mental condition.  He has an extremely poor

5    short-term memory.

6        THE COURT:  Oh, really?

7        MR. ALVA:  Yes.  Very short.  And he and I have

8    gone over a written allocution.  With your permission, he'd

9    like to read that into the record and answer that question.

10        THE COURT:  Yes.  But before we do that, can you

11    tell me a little bit more about that condition and how it has

12    affected your representation and his understanding of his

13    rights?

14        MR. ALVA:  How has it affected it?  It's affected

15    in every way.  Mr. Gordon -- it's not a matter of intention.

16    It's a matter of he simply is not capable of recalling

17    sometimes even the most basic things that happened 15 or 20

18    minutes ago.  If he forgets to ask a question at the time he

19    wants to ask it, he forgets what it is.

20        THE COURT:  Uh-huh.

21        MR. ALVA:  His life is a compilation of Post-Its

22    which he writes and sticks everywhere.

23        THE COURT:  Uh-huh.

24        MR. ALVA:  And then an hour later, forgets why he

25    wrote it.  So it -- everything in the plea agreement and the

1    superceding information were read by me to him line by line.

2    We went over sentence by sentence while it was still fresh in

3    his recollection.  So it has made me a more thorough attorney

4    for that purpose and in our -- we are both traveling from

5    Philadelphia for these proceedings.  A large majority of the

6    conversations were done at his store in Philadelphia.

7            THE COURT:  Uh-huh.

8            MR. ALVA:  So in the two hours plus that it takes

9    us to come here, we go over things again and again as to his

10   memory, his understanding.  While his memory as to certain

11   details wavers at times, his admission of guilt is uniformly

12   consistent, his contrition absolute and with his help, he and

13   I put together the statement that he would like to read to

14   the Court.  If you have any other questions, ask him directly

15   and he'll answer them.

16           THE COURT:  Well, just as to his condition, how are

17   you sure that he fully understands his rights and all of the

18   questions that I posed earlier and the answers that he gave

19   me?

20           MR. ALVA:  Because rather than just say to him, as

21   I would anyone else, do you understand what's just been said

22   to you, I ask him to explain immediately after giving it to

23   him, and he's given back to me in layman's language

24   information that makes me believe and know that he understood

25   what I said.

1          THE COURT:  Uh-huh.

2          MR. ALVA:  And questions that you asked of him are

3    questions that I'm quite familiar with in my practice of 40

4    years and I anticipated them and we went over those

5    specifically and told him the areas of questions that you may

6    ask and the specific questions that I thought you would ask

7    and he gave answers to me consistent with the full

8    understanding of the discussions.

9          THE COURT:  Uh-huh.  Was there ever a time when you

10   thought he did not understand the questions or the -- first

11   of all, that he did not understand what he was charged with?

12          MR. ALVA:  In the beginning.  Absolutely.

13          THE COURT:  Uh-huh.

14          MR. ALVA:  There was a lack of understanding, and

15   it may have been more than a lack of understanding.  It may

16   have been a lack of appreciation.  And there was a lack of

17   appreciation and then there came understanding, and with

18   understanding came contrition and continued understanding.

19          I would be less than candid with you if I told you

20   that from the time of the search to the time of today, this

21   has not been a journey to get him to this point to understand

22   what exactly he was involved in and that while he himself did

23   none of the smuggling, he facilitated the smuggling by the

24   people that he dealt with who did the smuggling and explained

25   to him that type of conspiracy and explained to him why that

1    is against the law, despite what he intended to do with the

2    ivory, that that's all part of the crime and through that

3    process, with the government's patience, we have brought

4    ourselves to this day.

5            THE COURT:  And are you saying that the information

6    necessary to allocute today and to fully understand that to

7    which he is allocuting transferred from the short-term memory

8    which was difficult for him to understand and retain, to a

9    longer-term memory which he has been able to retain?

10           MR. ALVA:  No.  What I'm saying is is that his

11   allocution and his admitting these crimes has been explained

12   to him.  We've gone over the answers and we've taken those

13   answers and we've written them down immediately --

14           THE COURT:  Uh-huh.

15           MR. ALVA:  -- so they could be preserved so that

16   when it came time to this point and he was asked these

17   questions by you, rather than I forget exactly what I wanted

18   to stay about that, we'd put it down --

19           THE COURT:  Uh-huh.

20           MR. ALVA:  -- in writing as a guarantee that

21   (a) you would understand that he understands what he's

22   pleading guilty to, and (b) he could put forth what he wanted

23   to say at the time when he admitted to these crimes.

24           THE COURT:  Uh-huh.  Mr. Gordon, do you have

25   anything to add?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Is Mr. Gordon under treatment for his

3     condition?

4          MR. ALVA:  He's not under treatment.  He was

5     examined fully.  I have a full psychiatric report which I

6     will attch to the -- my pre-sentence (inaudible)to the Court

7     which I (inaudible).  But he's not being actively treated for

8     it now.

9          THE COURT:  And does he have a diagnosis?

10          MR. ALVA:  Honestly, I think he does.  I don't

11     recall it.  I don't have the report with me at this moment.

12          May I have a moment?

13          THE COURT:  Sure.

14          MR. ALVA:  It was submitted to the government.

15        (Counsel confer.)

16          MR. LaVERNE:  I can't recall if there was a

17     diagnosis or not, to be honest with you.  I didn't seem to

18     me, I know upon reading it, to call into question in any way

19     his competency to proceed, his understanding of the criminal

20     charges and his ability to proceed here at sentence.

21          I would -- and I would just ask that Your Honor as

22     I'm sure you will, just confirm with Mr. Gordon that he has

23     understood everything that's happened here today, has

24     retained it, understands it, understands the fact that he

25     committed a crime, recalls that.  I think we got into this

1 whole line here by way of explaining why the allocution was

2 written as opposed to spoken.

3       And it's my experience it's not an unusual practice to

4 have a written allocution, so that the defendant doesn't miss

5 anything.  Not all of us are tremendous extemporaneous

6 speakers, so I'll leave it there and turn it back over to

7 Your Honor.

8             THE COURT:  No.  But I think his condition is very

9 relevant to this proceeding and I'm glad you brought it up

10 because it would have been incomplete without it.  All right.

11 So why don't we hear the allocution and then I'll proceed

12 from there?

13             MR. ALVA:  Okay.

14             THE DEFENDANT:  I, Victor Gordon, make the

15 following statement in furtherance of my plea of guilty.  I

16 fully understand the English language.  I am not under the

17 influence of drugs or alcohol.  I am not now or ever have

18 been committed to a mental institution.  I have read the

19 superceding information charging me with several federal

20 offenses.  My attorney Daniel Paul Alva has explained to me

21 these charges, the elements contained therein as well as any

22 possible defenses.

23             After a thorough review of the charges, the

24 evidence, *etcetera*, it is my desire to enter a plea of guilty

25 to these charges and put this chapter in my life behind me.

1    No one has threatened me, promised me anything beyond what is

2    set out in the plea agreement.  The factual basis for my plea

3    is as follows.

4              I come from a family of collectors, auctioneers,

5    merchants of various antiques and other items, and my mother

6    was an artist, all of which created a great interest within

7    me for arts and antiques.

8              Over the years, my interest in African art grew to

9    the point that I devoted a large part of my life and my

10   income to the collection and preservation of such items.

11   I've been collecting African elephant ivory for  many years

12   before the embargo and in my interest in said ivory -- and my

13   interest in said ivory was known throughout the trade.

14             In the early '80s, I decided that my art collection

15   was of such nature and quality that it could become the basis

16   for a museum dedicated to the beauty of African art.  The

17   dream shaped the next 30 years of my life and ultimately

18   brought me to this day.

19             Throughout these years and certainly throughout the

20   period of information -- of the information made, 2006

21   through October 25, 2009, I collected ivory for the purpose

22   of the museum.  When I wasn't working in my store, I was

23   trying to interest various government and private

24   institutions and concerns with the prospect for an African

25   art museum.

1    The ivory in question, while significant in its

2    amount, is actually -- actually formed a very small part of

3    my overall collection.  As I received many positive responses

4    in my proposals, I began to turn a blind eye to the

5    provenance of the ivory I was purchasing.

6    I knew that it was illegal to purchase and sell

7    post-embargo ivory, yet I continued to buy same without

8    properly researching its age or origin.  I fooled myself into

9    thinking that since my goal was noble, my actions were

10    lawful.  I know I was wrong and I stand before you in

11    disgrace.

12    The overwhelming majority of the ivory I bought was

13    stored in my basement -- in the basement of my property for

14    the museum.  Only a few minor ivory items were on display in

15    my store and only the items -- and the only items that I sold

16    were considered by myself as not being museum quality.  I

17    have read -- oh.  Well before the time of the search, I had

18    withdrawn all of the ivory from display.

19    I have read the list of ivory that was seized by

20    the government from various buyers to whom I had sold them

21    and I admit these were obtained by me in violation of the law

22    and agree that they are subject to forfeiture.

23    The items found in the basement of my store were

24    also subject to forfeiture for the same reasons. Although I

25    had some pieces of pre-embargo ivory, my lack of proper

1    records was such that I realized I could not prove their

2    provenance and thus agree to their forfeiture as well.

3         After the search of my store, the seizures therein

4    and in speaking with my attorney, I realize the gravamen of

5    my actions and the wrong-headedness of my dreams, my

6    contrition was such that I voluntarily surrendered numerous

7    pieces of ivory to the United States Attorneys Office on

8    October 15, 2010.

9         These items had been overlooked by the agents

10   during the search of my business.  I also agree that these

11   items are forfeitable for the same reasons as stated above.

12        Therefore, I admit the following.  That inasmuch as

13   I knowingly purchased the ivory that was post-embargo and in

14   violation of the African Elephant Conservation Act,

15   Title 16, United States Code Section 4223 *et seq.*, that I did

16   receive the ivory knowing that it had been imported contrary

17   to law.  That specifically between March and April 2009, I

18   purchased ivory that I knew had been imported into the United

19   States contrary to law under Title 18, United States Code

20   Section 982(a), 2(b) and Title 18, United States Code Section

21   545 that I received on various dates and listed in my guilty

22   plea agreement are forfeitable under the law and I hereby

23   agree to said forfeiture.  That in accordance with my plea

24   agreement, I agree to pay the money judgment of $150,000.

25        THE COURT:  All right.  Mr. Gordon, do you

1    understand everything that happened here today?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  And do you recall the

4    questions that I asked you and the answers that you gave?

5              THE DEFENDANT:  Most of them.  Some of them.

6              THE COURT:  Did you --

7              THE DEFENDANT:  I understood them all as you gave

8    them to me and I answered them all according to Your Honor.

9              THE COURT:  All right.  How long have you had a

10   memory problem?

11             THE DEFENDANT:  A long, long time.  I can't tell

12   you how many years.

13             THE COURT:  But years?

14             THE DEFENDANT:  Oh, yes.

15             THE COURT:  Many years?

16             THE DEFENDANT:  I have -- even when they came into

17   my place, I must have had two or 300 notes on my desk.

18   Little notes.  As long as I can remember, I have to write

19   notes to myself.

20             THE COURT:  Uh-huh.  And are you satisfied --

21             THE DEFENDANT:  I still function.

22             THE COURT:  -- right.  No.  I just want to be sure

23   that you understand fully what you're doing here because

24   you're giving up very important rights.

25             THE DEFENDANT:  I understand, Your Honor.

1          THE COURT:  Okay.  And you have discussed with your

2     lawyer -- well, have you understood everything that your

3     lawyer has said to you throughout his representation?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And do you remember your lawyer

6     explaining the process that he went through in making sure

7     that you understood that you had committed a crime and in

8     making sure that you understood what you were doing here

9     today in preparing for this?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And do you agree with everything that

12     he said?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  I understand from what you just read

15     that when you were importing ivory, you knew at some point

16     that it was illegal to do that.  Is that correct?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And that you, as you said, deluded

19     yourself or fooled yourself into thinking that because your

20     purpose was noble, that it was not a violation of the law.

21     Is that correct?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  And did you understand that there --

24     well, did you -- in importing that ivory into the United

25     States, did you in fact make an effort to conceal the fact

1   that you were bringing ivory into the country?

2           MR. ALVA:  That is not the case, Your Honor.  Mr.

3   Gordon didn't actually have any involvement in the

4   importation, the smuggling, the hiding, *et cetera*.  But as

5   the ultimate buyer of the ivory that others were importing

6   and smuggling the ivory, (inaudible) knew that African ivory

7   is not domestic and that it had to have been brought.

8           THE COURT:  Is that correct?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And did you know the people that

11  supplied you with the ivory were doing so illegally?

12          THE DEFENDANT:  Can I consult with my attorney,

13  Your Honor?

14          THE COURT:  Sure.

15      (Counsel and the defendant confer.)

16          THE DEFENDANT:  I should have known it, Your Honor.

17          THE COURT:  You knew it was -- did you know it was

18  illegal to bring African ivory into the United States?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  And did you know that the ivory that

21  you purchased and received came from Africa?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  All right.  And did you know that the

24  ivory that you purchased and received came from Africa after

25  the embargo on African ivory was in effect?

1           THE DEFENDANT:  I grew to find that out, Your

2     Honor.

3           (Counsel and the defendant confer.)

4           MR. ALVA:  Your Honor --

5           THE COURT:  You learned that at some point?

6           MR. ALVA:  Is that the case?  Did you learn at some

7     point --

8           THE DEFENDANT:  Yes.

9           MR. ALVA:  -- that that had come in post-embargo?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And did you learn that -- and did you

12    continue to purchase African ivory after you learned that it

13    was post-embargo?

14          MR. ALVA:  May it please the Court, when I refer to

15    the process of (inaudible)that process.  Mr. Gordon, when he

16    gave you his allocution, indicated that even the pre-embargo

17    pieces that he possessed -- he had no records with him

18    whatsoever.

19          THE COURT:  Right.  I know.

20          MR. ALVA:  He kept no records and as such, he -- I

21    think that -- and I think the government would agree with

22    me -- that anyone who deals in ivory today, they have a duty.

23          They have a duty of researching the provenance of

24    such ivory to make sure that it is, in fact, pre-embargo

25    ivory, that they cannot just willingly turn a blind eye to a

statement, oh, it's fine.  It's old.  That was what Mr.
Gordon did.  He turned a willful blind eye.  Never researched
provenance.  Never took any steps beyond the statements that
were made.

In the very end, right before -- irony of ironies,
right before his store was raided, he for the first time
actually refused to take ivory from someone because at that
point, he was convinced something wasn't right.  This must be
new.  The goods were left anyway.  The police came right in.

So it was a process for Mr. Gordon to realize for
the last two years that you can't run a business like you ran
despite what your goals are and especially when you're
dealing with African ivory and just not ask any questions,
not research history.  Because without that, it's got to be
new ivory.

And in fact, the ivory was tested by the government
and it was new ivory.  So he came to find out that he
understands what he did was wrong and he understands that by
being the ultimate buyer, he aided in the importation of it.

MR. LaVERNE:  Your Honor, if I may.  First of all,
the government takes a different position and this may end up
being hashed out at sentencing if we get there as to the
defendant's role in the importation of ivory.

And I would proffer that we have witness testimony
and other evidence which would show that the defendant was

1    actually actively involved in bringing the ivory into the

2    United States.

3         Leaving that aside for now, I think for today's

4    purposes in order for Mr. Gordon to successfully allocute, we

5    need him to allocute at the very least to a willful blindness

6    theory on this crime.

7         And I have the Second Circuit's approved

8    instruction on that in front of me here and I would like the

9    defendant to allocute here today that he deliberately closed

10   his eyes to what otherwise would have been obvious to him in

11   terms of the illegality of the ivory that he was purchasing

12   and receiving.  That he acted with conscious purpose to avoid

13   learning the truth about that ivory, and that he was aware of

14   a high probability that this ivory that he was receiving had

15   been brought into the country illegally.

16        I think we need that from the defendant, at a

17   minimum, in order to have a successful allocution here today.

18        THE COURT:  Would you like to ask those questions

19   slowly and individually?

20        MR. LaVERNE:  So I'll ask whether or not the

21   defendant acknowledges that in receiving elephant ivory in

22   the period March 2009 to April 2009 that he deliberately

23   closed his eyes to learning the provenance of that ivory and

24   to learning that it was, in fact, brought into the country

25   illegally.

1           THE COURT:  Do you understand the question?

2           THE DEFENDANT:  I do, Your Honor.  And everything

3  he just said, I'll answer yes to.

4           THE COURT:  All right.  That is true?  Okay.

5           MR. LaVERNE:  I'd actually like him just to put on

6  the record that it's true.

7           THE COURT:  Yes.

8           MR. LaVERNE:  What I just said.

9           THE COURT:  Yes.  That it's true.  Is that correct?

10  Is it true?

11           THE DEFENDANT:  Yes, Your Honor.

12           MR. LaVERNE:  And I'll also ask whether the

13  defendant acknowledges that he acted with a conscious purpose

14  to avoid learning the truth about that ivory that he received

15  and seeking out the provenance of it and the fact that it was

16  imported illegally into the country.

17           THE COURT:  Is that true?

18           THE DEFENDANT:  Yes, Your Honor.

19           MR. LaVERNE:  And finally, I'll ask the defendant

20  to confirm that he was aware of a high probability that that

21  ivory that we're dealing with in this information had been

22  imported into the United States contrary to law.

23           THE COURT:  Is that true?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  And in answering each of these

1    questions, are you basing your answer on your recollection of

2    what happened?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  And are you satisfied that your

5    recollection is accurate?

6                THE DEFENDANT:  Yes, Your Honor.

7                THE COURT:  All right.

8                MR. LaVERNE:  The government would also proffer

9    that the ivory in question here was imported through John F.

10   Kennedy International Airport.  I'd ask the defense to

11   stipulate to that fact here today.

12               MR. ALVA:  So stipulated.

13               THE COURT:  Is there anything else the government

14   believes it ought to place on the record at this time?

15               MR. LaVERNE:  No.  I think we've covered the

16   elements in the allocution.

17               THE COURT:  Mr. Alva, anything else you'd like to

18   add?

19               MR. ALVA:  No, Your Honor.

20               THE COURT:  Mr. Gordon?

21               THE DEFENDANT:  No, Your Honor.  But I'd like to

22   ask my attorney a question.

23               THE COURT:  Go ahead.

24          (Counsel and the defendant confer.)

25               MR. ALVA:  Thank you, Your Honor.

1          THE COURT:  Go ahead.  All right.  Let's start with

2     the basics here.  I find that Mr. Gordon is acting

3     voluntarily, that he fully understands the rights that he

4     has, the charges against him, the rights he's giving up by

5     pleading guilty, the consequences of a guilty plea, including

6     the possible sentence, fine and other penalties.

7          And you do understand that if you're -- I think I

8     asked this question several times, but I just want to ask it

9     again -- you understand that if you're not a citizen of this

10    country that you could be deported.  Is that correct?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Do you understand that there's no

13    guarantee what your sentence will be?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And I find that there's a factual basis

16    for the plea.  I also find that although Mr. Gordon does have

17    a problem with his memory, that he has demonstrated here both

18    through his own statements and through the statements of his

19    attorney that he fully understands everything that has

20    happened here in this proceeding, that his statements here

21    are based on his knowledge and his memory, and that he fully

22    comprehends all of these proceedings.

23         In addition, I find that he -- that Mr. Gordon did

24    in fact commit the crime that is alleged.  That based on

25    his -- again, his knowledge and his recollection as described

both through his own words and through his attorney's

statements, that Mr. Gordon was in fact aware at the time

that he committed the acts that he described, that he was

willfully turning a blind eye to the fact that the ivory that

he was purchasing had been -- was likely -- that there was a

high probability that that ivory had a provenance of -- an

illegal provenance from Africa and was in fact what has been

termed to be new ivory that was brought in after the embargo

was imposed.

So I find that he did in fact violate provisions of

the statute alleged in the superceding information.

Is there anything else that any of the parties

would like to add at this point?

MR. LaVERNE:  I would just -- I'm not sure we

covered this, but I would proffer that the government would

show that the ivory in question was in fact ivory that had

been brought in illegally and was the conditions under which

it had to be brought in legally were not complied with.  I

take it there's no objection from the defense on that?

MR. ALVA:  No.  None whatsoever.

THE COURT:  Right.  And again, Mr. Gordon, do you

understand what was just said?

THE DEFENDANT:  No.  Actually, I didn't understand

what he just said.

THE COURT:  Okay.  Would you like to explain that

1    one more time?

2          MR. LaVERNE:  The government -- if we went to

3    trial, the government would prove that the ivory that Mr.

4    Gordon received was in fact brought in illegally by someone.

5    That the process in which it was brought into the country did

6    not comply with the law and I just take it that there's --

7    I'd just ask the defendant to stipulate that that's the case

8    under the circumstances that Your Honor has outlined already.

9          THE DEFENDANT:  Now I understand it.

10          THE COURT:  All right.  Do you understand?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And your lawyer has said that you

13    stipulate or agree.  Are you in agreement with that?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Okay.  Anything else?

16          MR. LaVERNE:  No, Your Honor.

17          MR. ALVA:  No, Your Honor.

18          THE COURT:  All right.  Thank you.

19          MR. LaVERNE:  Thank you very much.  Appreciate your

20    patience.

21          MR. ALVA:  If Your Honor pleases, my client after

22    that, there's another issue which my client has asked me to

23    bring to your attention.

24          THE COURT:  Okay.

25          MR. ALVA:  I think I know the answer, but he asked

1    me to bring it to your attention.  As I indicated to you

2    earlier, he lives in the Philadelphia area, has his business

3    in Philadelphia.  He's on pre-trial release and he's

4    monitored by Philadelphia authorities.

5            He'd like to know whether or not Probation of

6    Philadelphia can interview him and do all of the pre-sentence

7    investigation, or whether or not he must come back to fair

8    Brooklyn for that process.

9            THE COURT:  You know, I don't have any control over

10   that and what I would suggest is that you contact the

11   Probation Department here and ask them if they would allow

12   the pre-sentence investigation report to be conducted out of

13   Philadelphia.  I don't know whether they do that.

14           My guess is that they don't, but because I think we

15   do a very, very thorough pre-sentence investigation report

16   and I believe it would be to your advantage to have as much

17   information placed in that report as possible.  It will help

18   Judge Matsumoto in determining what sentence to give you.

19   Anyway, so bottom line is --

20           MR. ALVA:  We'll ask.

21           THE COURT:  -- ask.  Ask.

22           MR. ALVA:  Thank you.

23           THE COURT:  Okay.  And we do have a sentencing

24   date?

25           THE CLERK:  Yes.  Sentencing will occur on

1     April 23rd, 2013 at 11 a.m. before Judge Matsumoto.

2              MR. ALVA:  Thank you very much.

3              MR. LaVERNE:  Thank you, Your Honor.

4              THE DEFENDANT:  Thank you, Your Honor.

5              THE COURT:  I have some documents for the

6     government.

7              MR. ALVA:  We're off the record?  11 am.

8              THE COURT:  We're off the record.

9         (Proceedings concluded at 4:56 p.m.)

10        I, CHRISTINE FIORE, court-approved transcriber and

11    certified electronic reporter and transcriber, certify that

12    the foregoing is a correct transcript from the official

13    electronic sound recording of the proceedings in the above-

14    entitled matter.

15    *Christine Fiore*

16

17    _____          October 27, 2012

18        Christine Fiore, CERT

19

20

21

22

23

24